[Civ. No. 48444. Second Dist., Div. Four. Nov. 8, 1976.]

EARL REINBOLD, Plaintiff and Appellant, v.
CITY OF SANTA MONICA et al., Defendants and Respondents.

## COUNSEL

Dolman, Wolfe & Linden, Watkin & Wolfe, Warren I. Wolfe and James M. Fischer for Plaintiff and Appellant.

Richard L. Knickerbocker, City Attorney, and Carole Heller Solomon, Deputy City Attorney, for Defendants and Respondents.

## OPINION

**KINGSLEY, Acting P. J.**—On January 28, 1975, one year after appellant was retired from the City of Santa Monica, he filed a petition for a writ of mandate for damages, and to compel respondents to include him under, and provide him with, the benefits of resolution No. 4413. Resolution No. 4413 ratified a memorandum of understanding (hereinafter MOU) dated August 1973, executed between the City of Santa

Monica (hereinafter "City") and the Santa Monica Police Officers' Association (hereinafter "SMPOA").[1] Appellant, who is the ex-police chief of the City, also sought to compel the City to permit him to associate freely with SMPOA and other peace officer organizations.

Section 2.02(b) of the 1973 memorandum of understanding provided a lump sum benefit of accumulated unused sick leave on their retirement to employees covered by that 1973 MOU. Appellant's unused sick leave at his retirement amounted to $28,178 and he seeks that amount in damages.

Appellant had been a member in good standing of SMPOA since 1937, and had received many health and life insurance benefits from that organization. Apparently the only benefit he did not receive was the accumulated sick leave pay on retirement.

In 1969, pursuant to the Meyers-Milias-Brown Act (hereinafter "MMB Act"; Gov. Code, § 3500 et seq.), the City enacted Ordinance CCS No. 801 to deal with public employee organizations.

On April 30, 1971, the SMPOA petitioned the City of Santa Monica for recognition, requesting that a certain employee group be designated as an appropriate unit for bargaining purpose. Appellant, the chief of police, was among the employees included in the petition. However, in a notice of determination of appropriate bargaining unit, the city manager excluded the chief of police from the appropriate bargaining unit. At that time the assistant chief of police also was excluded.

On October 26, 1971, the City and SMPOA executed a memorandum of understanding (MOU 1971) which excluded the assistant police chief and appellant. The 1973 MOU between SMPOA and the City, which was ratified by resolution No. 4413, provided for the benefits appellant is seeking, but appellant was again not named as an employee covered by that MOU. The assistant police chief was named in the 1973 MOU, rather than being included in the management team association to which the assistant police chief had been previously relegated.

[1]Pursuant to the order of this court entered on September 1, 1976, we have taken judicial notice of the memorandum of understanding, as requested by counsel for the city in his letter of August 5, 1976.

The assistant police chief received approximately $27,000 in unused sick leave pay on retirement. Appellant received nothing for his unused sick pay.

Section 1.04(j) of the 1973 MOU defines "Management officials" as . . . "Department heads *and their designated representative acting in their executive, administrative or ministerial capacity* as authorized or prescribed by the Santa Monica Municipal Code and/or Charter of the City of Santa Monica." (Italics added.)

Section 2.01(e) of CCS Ordinance 801 provides: "Department heads charged with the duty and responsibility of enforcing state laws or local ordinances shall not form, join, or participate in recognized employee organizations."

Section 1101 of the same Charter provides that: "*All* employees of the City . . . may designate representatives of their own choosing . . . [in] matters concerning wages, hours or conditions of employment." (Italics added.)

## I

■ Our first question is whether mandamus and declaratory relief are proper remedies. If there is a clear, present (and usually ministerial) duty on the part of respondents, and a clear, present and beneficial right on the petitioner, to the performance of that duty, the writ of mandamus will be granted. (Code Civ. Proc., §§ 1085, 1086; see *Baldwin-Lima-Hamilton Corp.* v. *Superior Court* (1962) 208 Cal.App.2d 803, 813 [25 Cal.Rptr. 798].) The ministerial acts of local boards and officers which can be compelled by mandamus are virtually unlimited in numbers for they arise under a wide variety of statutes and ordinances. (5 Witkin, Cal. Procedure (2d ed. 1971), § 71, pp. 3848-3849.) Therefore, if appellant can show a clear, present duty to include him in the MOU, and a clear, present and beneficial right in him to be so included, mandate will lie. Also, mandamus will lie to correct abuse of discretion (*Inglin* v. *Hoppin* (1909) 156 Cal. 483 [105 P. 582]), and plaintiff is also entitled to the writ if he can show such abuse. ■ Both mandamus and declaratory relief will lie to enforce a memorandum of understanding and to compel public officials to do what is necessary to make payment to employees. (See *Glendale City Employees' Assn., Inc.* v. *City of Glendale* (1975) 15 Cal.3d 328 [124 Cal.Rptr. 513, 540 P.2d 609].) And

it has also been held that a writ of mandate was proper to correct discrimination against employees who exercise their rights under the MMB Act. (*San Leandro Police Officers Assn. v. City of San Leandro* (1976) 55 Cal.App.3d 553, 557-558 [127 Cal.Rptr. 856].) Therefore, mandate and declaratory relief are proper remedies, provided appellant can show that he was entitled to be represented by SMPOA in the matter of retirement benefits for unused sick leave.

## II

Appellant argues that a public employer may not deny an employee the right to be represented by a collective bargaining unit of his choice. Appellant argues that, although the Legislature, in order to prevent a potential conflict of interest, had provided that public employers may restrict management level employees who belong to collective bargaining units of their choice *from representing* such units, the employer may not prohibit the management employee from being *represented by* such unit. Government Code section 3507.5 supports appellant's contention that the police chief, as a management employee, could belong to and hold office in SMPOA. Section 3507.5 reads: "In addition to those rules and regulations a public agency may adopt pursuant to and in the same manner as in Section 3507, any such agency may adopt reasonable rules and regulations providing for designation of the management and confidential employees of the public agency and restricting such employees *from representing any employee organization,* which represents other employees of the public agency, on matters within the scope of representation. *Except as specifically provided otherwise in this chapter, this section does not otherwise limit the right of employees to be members of and to hold office in an employee organization."* (Italics added.)

There is also language in *Organization of Deputy Sheriffs v. County of San Mateo* (1975) 48 Cal.App.3d 331 [122 Cal.Rptr. 210], to support this position. That court stated that, although management may not represent employees, management may be represented by their organization. The court said at page 342: "The county acknowledges that these management employees as an appropriate unit, are free to select ODS as their representative organization."

However, nothing in that government code section requires that plaintiff be put in the same bargaining unit as nonmanagement

employees. Section 3507.5 is silent about management's unit placement (Grodin, *Public Employee Bargaining in California: The Meyers-Milias-Brown Act in the Courts* (1972) 23 Hastings L.J. 719, 740) and nothing in that section requires that the police chief be placed in the same bargaining unit as nonmanagement employees. ▉ A clear distinction must be drawn between public employees' right to organize and their right to a separate bargaining unit; the employer determines whether the employee is entitled to a separate representation. (Gov. Code, § 3501; *Santa Clara County District Attorney Investigators Assn.* v. *County of Santa Clara* (1975) 51 Cal.App.3d 255 [124 Cal.Rptr. 115].) The county may designate any management and confidential employees as a separate representation unit. (*Organization of Deputy Sheriffs* v. *County of San Mateo, supra,* (1975) 48 Cal.App.3d 331.) And the only standard by which the county is to be governed in determining whether a bargaining unit is appropriate is whether such determination is reasonable. (Gov. Code, § 3507; *Alameda County Assistant Public Defenders Assn.* v. *County of Alameda* (1973) 33 Cal.App.3d 825, 830 [109 Cal.Rptr. 392]; *Organization of Deputy Sheriffs* v. *County of San Mateo, supra,* (1975) 48 Cal.App.3d 331, 337; *Santa Clara County District Attorney Investigators Assn.* v. *County of Santa Clara, supra,* (1975) 51 Cal.App.3d 255, 264.) The criteria for determining an appropriate unit may include, but should not be limited to, such factors as community of interest among the employees, history of representation, and the general field of work. (*Alameda County Assistant Public Defenders Assn.* v. *County of Alameda, supra,* (1973) 33 Cal.App.3d 825.)

▉ The question then before us is whether designating the police chief in a separate bargaining unit by himself is reasonable. Although, as we have said, the county may create a separate management unit (*Organization of Deputy Sheriffs* v. *County of San Mateo, supra,* (1975) 48 Cal.App.3d 331), because there is a community of interest among management employees, (see 51 Cal.App.3d 255), we find that the exclusion of the chief of police from, and the inclusion of the assistant chief of police in, a bargaining unit with the other employees, to be an unreasonable classification and violative of the MMB Act.

If the assistant chief of police is management, it is unreasonable to segregate him from the chief of police. ▉ Whether an employee is managerial may be answered in terms of the employee's actual job responsibilities, authority and relationship to the outside world. (*NLRB* v. *Bell Aerospace Co.* (1974) 416 U.S. 267 [40 L.Ed.2d 134, 94 S.Ct.

1757].) On the record before us, we can not state with certainty whether the assistant chief of police was a "strawboss"; (*NLRB* v. *Bell Aerospace Co.*), or whether he was actual management.[2]

Whether a person's duties are actually supervisory such that he may be excluded from a bargaining unit is factual. (See *Fire Fighters Union* v. *City of Vallejo* (1974) 12 Cal.3d 608 [116 Cal.Rptr. 507, 526 P.2d 971].) ▮ However, it would appear that there is a sufficient "community of interest" between a chief of police and an assistant chief and there is a similarity in their "general field of work," so that their segregation into separate bargaining units is unreasonable on its face.

The City argues that the police chief's segregation into a separate bargaining unit was authorized by section 201(e) of the Santa Monica Ordinance 801. Section 201(e) reads:

"Department heads charged with the duty and responsibility of enforcing state laws or local ordinances shall not form, join, or participate in recognized employee organizations."

▮ Although it is clear that, under City charter 2.01(e), the chief of police was properly excluded, that section of the City's charter conflicts with Government Code section 3507.5 which requires that reasonable rules be adopted. Although it is reasonable to establish a bargaining unit consisting only of management employees (see *Organization of Deputy Sheriffs* v. *County of San Mateo, supra,* (1975) 48 Cal.App.3d 331), a bargaining unit of only the chief manager, who is separated from the assistant chief and the rest of the management personnel, is not reasonable. Local legislation may not conflict with such statutes as the MMB Act. (*San Leandro Police Officers Assn.* v. *City of San Leandro, supra,* (1976) 55 Cal.App.3d 553.) Since section 201(e), as the City interprets it, conflicts with the requirement that bargaining units be appropriate and reasonable under the MMB Act, we find section 201(e) to be invalid local legislation.

▮ As we have stated before, under the MMB Act, no matter whether appellant was an appropriate bargaining unit by himself, appellant nevertheless was free to select SMPOA as his representative

---

[2]Appellant alleges in his brief that the assistant chief had management duties and took over for the chief of police while the chief was on vacation. Respondents do not deny this.

organization. Section 3507.5 merely precludes management from representing nonmanagement employees; the language does not preclude management from being represented by the bargaining organization. Any concern that there may be a conflict of interest between management and the other employees, is obviated by the fact that it is not management representing the employees.

Further, the 1973 MOU designated "Management Officials" as . . . "Department heads and their designated representatives acting in their executive, administrative, or ministerial capacity as authorized or prescribed by the Santa Monica Municipal Code and/or Charter of the City of Santa Monica." Therefore, under the terms of the 1973 MOU, the police chief should have been classified with the assistant police chief for purpose of the 1973 MOU.

The chief argues that *San Leandro Police Officers Association* v. *City of San Leandro, supra,* holds that the City may not discriminate against appellant. Appellant admits that he was not discriminated against because he chose to join an employee organization, and the *San Leandro* case, at least insofar as this particular argument is concerned, is not applicable to appellant's situation.

## III

Appellant argues that there was no good faith consultation. Government Code section 3507 provides in pertinent part: "A public agency may adopt reasonable rules and regulations after consultation in good faith with representatives of an employee organization or organizations for the administration of employer-employee relations under this Chapter (commencing with Section 3500)."

The record does not show good faith consultations as required by Government Code section 3507. We are not suggesting there was any bad faith on the part of the City. On the contrary, the City was merely following its own ordinance (section 201(e)) in deciding to exclude appellant. However, their good faith in following ordinance section 201(e) is not a showing of good faith "consultation." The record is simply devoid of this necessary showing.

## IV

Additionally, appellant's exclusion from the bargaining unit violates the City's own charter section 1101. Section 1101 reads: "All employees of the City are free from interference, coercion and restraint in associating themselves together for their mutual benefit in connection with their public employment. They may designate representatives of their own choosing and collectively or individually they may exercise their right of petition . . . [in] matters concerning wages, hours or conditions of employment."

While it is correct that the right to designate representatives, as provided for in the above ordinance, is limited by the fact that bargaining units must be appropriate, as we have said before, segregating the police chief from the assistant police chief is neither reasonable nor appropriate.

## V

Appellant argues that he has been denied equal protection of the law. He argues that, in areas involving "suspect classifications" or "fundamental interests," the court subjects classification to strict scrutiny. (*Westbrook* v. *Mihaly* (1970) 2 Cal.3d 765 [87 Cal.Rptr. 839, 471 P.2d 487].) However, even though certain retirement benefits are sometimes fundamental (*Strumsky* v. *San Diego Employees Retirement Assn.* (1974) 11 Cal.3d 28, 48 [112 Cal.Rptr. 805, 520 P.2d 29]), we do not believe the retirement benefit here is classified as such a "fundamental right." The criteria for a "fundamental right" is described in *Strumsky*. That case said at page 45: " 'In determining whether right is fundamental the courts do not alone weigh the economic aspect of it, but the effect of it in human terms and the importance of it to the individual in the life situation.' (4 Cal.3d at p. 144.) It is the latter consideration which renders the instant right fundamental. Above and beyond the 'economic aspect' present in all pension cases, we have here a situation in which the benefits sought might well mean to the officer's widow the difference between self-support and the necessity that she supplement pension income through employment or other means."

Under the *Strumsky* test, appellant's rights, if any, are not "fundamental."[3]

Respondents argue that merely excluding appellant from an appropriate bargaining unit did not violate his statutory right to be a member of SMPOA. Respondents are correct in this contention. However, that argument does not aid respondents in persuading us that the bargaining unit of the police chief alone was a reasonable one, and adds little to respondents' cause.

■ Respondents' argument that the police chief was not civil service while the other employees were civil service also does not make his segregation in a separate unit reasonable. Nor does the fact that he is chief supervisor reporting on the efficiency of other employees make his segregation from other management reasonable. Other managers below the chief of police have similar duties in relation to the employees that they supervise.

Respondents argue that the 1973 MOU provides that the MOU shall be effective only on court approval of the settlement in Los Angeles Superior Court cases C 977565 and C 20995. Respondents argue that these suits for mealtime compensation and briefing period compensation had the assistant chief of police as a plaintiff and appellant as a defendant, and therefore it was appropriate to include the assistant chief of police and exclude the chief of police from the 1973 MOU. Appellant, on the other hand, argues that the mealtime litigation was solely concerned with nonmanagerial peace officers in July 1973 and in, August 1973, when the MOU was executed, it included the assistant police chief. Appellant points out that the mealtime litigation was settled, months later.

We fail to understand the significance of this argument by respondents. Certainly, it does not persuade us that the bargaining unit of only the police chief was a reasonable one.

Respondents argue that there is no allegation in the complaint of an "appeal" by SMPOA to include appellant, and this failure to pursue appellant's right further through appeal shows his placement in a

---

[3]Appellant's reliance on *Ball* v. *City Council* (1967) 252 Cal.App.2d 136 [60 Cal.Rptr. 139], which held that a public entity can not discharge an employee because he exercised a statutory right to join an employees' organization, is not in point, and does not merit more intensive discussion.

separate bargaining unit was based on reasonable criteria. Without belaboring the argument, this is a non sequitur.

## VI

■ Appellant is not guilty of laches. The argument that the City might have adopted a different MOU if they knew the chief of police was to be included does not show substantial prejudice. The assistant chief's sick leave pay was approximately the same as the chief's, and the chief's sick pay was only about 5 percent of the total sick leave package, an amount which could not have caused substantial prejudice. (See *Abbott* v. *City of Los Angeles* (1958) 50 Cal.2d 438 [326 P.2d 484].)[4]

In the case at bar appellant was denied his right to organizational representation. Although the MMB Act is silent about the unit placement of managerial employees, the MMB extends organizational and representation rights to supervisory and managerial employees without regard to their position in the administrative heirarchy. (*Organization of Deputy Sheriffs* v. *County of San Mateo, supra,* (1975) 48 Cal.App.3d 331, 338.) ■ Appellant's exclusion from a bargaining unit with other managers and supervisors is unreasonable and invalid and appellant had a right to be represented by SMPOA in matters of his accumulated unused sick leave.

It follows that appellant was illegally denied payment for his accumulated sick leave.

The judgment is reversed.

Dunn, J., and Jefferson (Bernard), J., concurred.

A petition for a rehearing was denied November 24, 1976, and respondents' petition for a hearing by the Supreme Court was denied January 5, 1977.

---

[4]In the *Abbott* case the court said certain benefits were induced by the necessity of attracting and holding competent employees.